In The Matter of 26 TRUMBULL STREET d/b/a Hubbard's Park, Debtor.

Bankruptcy No. 2–85–01013.

United States Bankruptcy Court, D. Connecticut.

Aug. 27, 1987.

John J. O'Neil, Jr., Hartford, Conn., Trustee, pro se.

James Wu, Carmody & Torrance, Waterbury, Conn., for The Bank of Boston Connecticut, claimant.

## MEMORANDUM OF DECISION ON MOTION FOR DETERMINATION OF PRIORITIES

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The dispositive issue presented by the trustee's motion to determine priorities in

proceeds resulting from a sale of estate property is the appropriate method of valuation of the various assets sold. The following background is based upon the case file and an evidentiary hearing held on May 22, 1987.

## II.

The debtor, then operating a restaurant known as Hubbard's Park, filed a chapter 11 petition on November 22, 1985. The restaurant was located at premises at 26 Trumbull Street, Hartford, Connecticut under a lease expiring March 31, 1989, with an option to renew for a further five-year term. On June 10, 1986, the debtor, having closed the restaurant, converted its case to one under chapter 7, and John J. O'Neil, Jr. was appointed trustee.

On August 7, 1986, with the consent of the landlord and a secured party, the trustee sold, at an auction conducted in court, the lease and the restaurant equipment and furnishings for a total price of $165,000.00. From this sum, $25,112.68 has been paid to the landlord to cure lease defaults, and a balance of $139,887.32 plus accrued interest remains. The Bank of Boston Connecticut (Bank) held a security interest in all the equipment and furnishings as collateral for its debt of $132,008.71. The lease was unencumbered. In this proceeding the Bank and the trustee are at issue over how to establish the separate values of the lease and the collateral, the combined sale of which resulted in the proceeds of $165,000.00.

## III.

An appraiser who testified on behalf of the trustee valued the collateral at $21,150.00 by determining the liquidation value of each item of the collateral. He assumed that the buyers of the collateral would have to remove their purchases from the premises. He further estimated a value of between $31,000.00 and $32,000.00 on a fair market basis, where no auction was held and with sufficient time for a willing seller to locate a willing buyer.

The Bank presented testimony from two appraisers. The first appraised the collateral at $90,000.00 on an "in-place" basis. This valuation, his report stated, relied on "the furnishings and equipment to be used as a unit, installed and in place...." He agreed that if the collateral were auctioned and removed, the valuation of the trustee's appraiser would be accurate.

The Bank's second appraiser valued the debtor's leasehold interest at $60,000.00. He based his opinion on comparison of the rent called for by the debtor's lease with rents currently being charged for restaurant space in the general downtown Hartford area.

## IV.

The Bank claims that the collateral should be valued at $90,000.00, because the property was, in fact, sold in place. In the alternative, the Bank contends that the court should find the value of the lease to be $60,000.00, thereby leaving a value of $105,000.00 to be placed on the collateral.

The trustee argues for a liquidation value of $21,150.00 for the collateral because an auction sale with buyers required to remove the property would have been the Bank's "customary means of disposition." *In re Adams*, 2 B.R. 313 (Bankr.M.D.Fla. 1980). He asserts the estate should be the beneficiary of the balance of the $165,000.00 purchase price because to accept the Bank's argument would give a secured creditor, and not the unsecured creditors, the benefit of the trustee's power to assume and assign leases under the Bankruptcy Code.

## V.

Assuming that the value of the collateral if retaken by the Bank under its security documents and thereafter sold would be $21,150.00, and that the lease value is $60,000.00, the sale of the lease and the collateral together to the buyer thereby increased their combined value by $83,850.00 (*i.e.*, $165,000.00 minus $81,150.00). Neither the parties nor the court have been able to locate any decisional authority on how to handle what would seem to be a common occurrence. I believe that an eq-

uitable method to deal with the $83,850.00 increment is to divide it between the Bank and the trustee in proportion to their interests.[1]

Accordingly, I find that the Bank's security interest attaches to 21,150/81,150 of the $83,850.00 increment, or to $21,854.00. When this sum is added to the $21,150.00 value, the total due to the Bank is $43,004.00. From this amount, the trustee shall withhold the amount due the City of Hartford on its personal property tax liens filed prior to the financing statement of the Bank, and the trustee shall pay the balance plus interest earned since receipt of the sale proceeds to the Bank. It is

SO ORDERED.

**1.** The Bankruptcy Code implies that value should have a flexible meaning. Section 506(a), in providing for a valuation of a secured claim of a creditor secured by a lien on estate property, states:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The comment by the House Judiciary Committee relevant to § 506(a) reads, in part, as follows:

> Subsection (a) of this section ... "Value" does not necessarily contemplate a forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6312.